**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 7, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

ERIK HOLT, an individual,

    Plaintiff - Appellant,

v.

FLORISSANT FIRE PROTECTION
DISTRICT, a Colorado non-profit
corporation,

    Defendant - Appellee.

No. 25-1159
(D.C. No. 1:23-CV-01798-NYW-MDB)
(D. Colo.)

_____

**ORDER AND JUDGMENT***
_____

Before **TYMKOVICH**, **MURPHY**, and **BACHARACH**, Circuit Judges.
_____

**I. INTRODUCTION**

Erik Holt was employed as Fire Chief by the Florissant Fire Protection District

("FFPD"). Following the election of a new Board of Directors, FFPD terminated

Holt's employment. Holt sued FFPD asserting his employment was terminated

because he engaged in speech protected by the First Amendment. The district court

granted summary judgment to FFPD on the first element of the five-element

---

\* This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

*Garcetti/Pickering* test.[1] *Holt v. Florissant Fire Prot. Dist.*, No. 23-cv-01798-NYW-MDB, 2025 WL 947519, at *1, 3-5 (D. Colo. Mar. 28, 2025). That is, the district court concluded Holt's speech was not protected by the First Amendment because the speech was uttered pursuant to Holt's official duties as Fire Chief. *Id.* at *3-5. Holt appeals. Based on the record before the district court,[2] Holt failed to demonstrate his speech was not made pursuant to his official duties. *See Timmins v. Plotkin*, 157 F.4th 1275, 1277 (10th Cir. 2025) (holding the first *Garcetti/Pickering* element is a

---

[1] *See Garcetti v. Ceballos*, 547 U.S. 410 (2006); *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968); *see also Tufaro v. Okla. ex rel. Bd. of Regents of Univ. of Okla.*, 107 F.4th 1121, 1138 (10th Cir. 2024) (holding that each of the five parts of the *Garcetti/Pickering* test are "essential elements" and that "to prevail" on a public-employee First Amendment retaliation claim "a plaintiff must establish all five elements" (quotation and alteration omitted)).

[2] Currently pending is Holt's pro se "Motion for Judicial Notice of Official District Attorney Investigative Report." Holt asks this court to judicially notice an investigative report produced by the Office of the District Attorney Fourth Judicial District for the purpose of demonstrating the nature and extent of Holt's communications with investigators. Federal courts can, in appropriate circumstances, take judicial notice "at any stage of the proceeding," including on appeal. Fed. R. Evid. 201(d); *United States v. Bagby*, 696 F.3d 1074, 1083 n.7 (10th Cir. 2012). This is not an appropriate circumstance. *Magnum Foods, Inc. v. Cont'l Cas. Co.*, 36 F.3d 1491, 1502 n.12 (10th Cir. 1994) ("[O]ur review of a grant of summary judgment is limited to the record before the trial court at the time it made its ruling."); *Allen v. Minnstar, Inc.*, 8 F.3d 1470, 1475 n.4 (10th Cir. 1993) (collecting cases for this proposition). "It is rarely appropriate for an appellate court to take judicial notice of facts that were not before the district court." *Flick v. Liberty Mut. Fire Ins. Co.*, 205 F.3d 386, 392 n.7 (9th Cir. 2000). Through his motion, Holt seeks to provide evidentiary support for his First Amendment claim that he failed to adduce in the district court. Allowing Holt to alter the factual record on appeal from an adverse grant of summary judgment would do damage to "the integrity of the appellate structure" by turning his appeal to this court into a "second-shot forum." *See Tele-Communications, Inc. v. Comm'r*, 104 F.3d 1229, 1233 (10th Cir. 1997) (quotation omitted). Holt's motion to take judicial notice is **DENIED**.

question of law, on which "[t]he employee has the burden of persuasion"). Thus, exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **affirms** the district court's grant of summary judgment in favor of FFPD.

## II. BACKGROUND

### A. Legal Background

"[P]ublic employees do not surrender all their First Amendment rights by reason of their employment." *Garcetti*, 547 U.S. at 417. Nevertheless, they "are subject to some constraints not applicable to private citizens." *Timmins*, 157 F.4th at 1277. "These constraints are necessary because government employers, like private employers, must be able to exercise a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services." *Id.* (quotation omitted); *see also Leverington v. City of Colo. Springs*, 643 F.3d 719, 723 (10th Cir. 2011) ("[T]he interests of public employees in commenting on matters of public concern must be balanced with the employer's interests in promoting the efficiency of the public services it performs through its employees." (quotation omitted)).

"To determine if an employer's adverse employment action against an employee is an impermissible retaliation under the First Amendment, [this court applies] the *Garcetti*/*Pickering* test." *Knopf v. Williams*, 884 F.3d 939, 945 (10th Cir. 2018). "For the public employee to prevail under this test . . . five elements must be established . . . ." *Timmins*, 157 F.4th at 1277. Only the first element—that "[t]he protected speech was not made pursuant to an employee's official duties"—is at issue

3

in this appeal. *See id.*[3] "If the employee speaks pursuant to his official duties, then there is no constitutional protection because the restriction on speech simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Couch v. Bd. of Trs. of Mem'l Hosp.*, 587 F.3d 1223, 1235 (10th Cir. 2009) (quotations omitted).

The "official duties" element is a question of law to be decided by the court. *Knopf*, 884 F.3d at 945. This court takes "a broad view of the meaning of speech that is pursuant to an employee's official duties." *Id.* (quotation omitted); *see also Tufaro v. Okla. ex rel. Bd. of Regents of Univ. of Okla.*, 107 F.4th 1121, 1138 (10th Cir. 2024) ("In repeated cases, we have taken a broad view of the meaning of speech that is pursuant to an employee's official duties. This creates a heavy barrier to overcome." (quotations and citations omitted)). "The critical question . . . is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties. If the speech involves the type of activities that the employee was paid to do, . . . it falls within the scope of an employee's duties." *Knopf*, 884 F.3d at 945 (quotations, citation, and alterations omitted). "There

---

[3] The other four elements a public employee must establish to prevail on a First Amendment claim, none of which are at issue in this case, are as follows: (2) the speech involved "a matter of public concern"; (3) the government's interests as an employer in promoting the efficiency of the public service did not outweigh the plaintiff's interests in free speech; (4) "[t]he protected speech was a motivating factor in the adverse employment action"; and (5) the public employee would not have "made the same employment decision in the absence of the protected speech." *Timmins v. Plotkin*, 157 F.4th 1275, 1277 (10th Cir. 2025).

are no bright line rules in making this determination." *Id.* (quotation omitted). "Many

facts may be relevant—the tasks in an employee's job description, the frequency with

which an employee performs a task, the subject matter of the employee's speech, the

recipient of the employee's speech, the legal obligation for the employee to speak—

but no one fact is determinative." *Id.*; *see also Tufaro*, 107 F.4th at 1138. This court

"take[s] a practical view of all the facts and circumstances surrounding the speech

and the employment relationship." *Knopf*, 884 F.3d at 946. Ultimately the dispositive

question is whether the employee was "perform[ing] the task[] he was paid to

perform" when he spoke. *Lane v. Franks*, 573 U.S. 228, 239 (2014) (quotation

omitted). If so, the "speech was therefore commissioned by his employer and it

enjoys no First Amendment protection." *Knopf*, 884 F.3d at 946 (quotation and

citation omitted).

## B. Factual Background

Because the issue is dispositive, this court limits its factual recitation to those

facts relevant to whether Holt's speech was made pursuant to his official duties. The

record evidence on that question is exceedingly thin. *But see Timmins*, 157 F.4th at

1277 (holding that Holt, as the government employee, has the burden of persuasion

as to this question).[4] Nevertheless, this court views the facts and draws all reasonable

---

[4] This court notes that no factual assertion set out in Holt's opening pro se
brief is accompanied by a citation to the record. Fed. R. App. P. 28(a)(8)(A) requires
the argument section of an appellant's opening brief to cite the "parts of the record on
which the appellant relies." Failure to comply with the dictates of Rule 28(A)(8)(A)
may result in an appellate waiver. *Burke v. Regalado*, 935 F.3d 960, 1014 (10th Cir.
2019). After all, "[t]he rules of appellate procedure are designed to facilitate efficient

inferences in the light most favorable to Holt, the nonmoving party. *Tufaro*, 107 F.4th at 1131.

FFPD employed Holt as Fire Chief from April 2022 until June 22, 2023. The position required Holt to "make[] executive-level decisions in alignment with the direction of the organization as defined by [FFPD's] Board of Directors." R. Vol. 2 at 54. Holt's job responsibilities as Fire Chief included "leading, managing and administering all [FFPD] operations" and "making difficult technical and administrative decisions." *Id.* His primary duties involved "overseeing all fire suppression, all-hazards response, and emergency medical response activities of the

---

appellate review by allowing one's adversary to respond to focused argument supported by authority." *MacArthur v. San Juan Cnty.*, 495 F.3d 1157, 1160 (10th Cir. 2007). And, importantly, this court "decline[s] to scour the record" for record evidence supporting factual assertions made in an appellant's brief. *PHL Variable Ins. Co. v. Sheldon Hathaway Fam. Ins. Tr. ex rel. Hathaway*, 819 F.3d 1283, 1289 (10th Cir. 2016) (quotation omitted). Holt's failure to comply with Rule 28(a)(8)(A) is not excused by his pro se status. "A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). This principle does not, however, excuse a litigant's obligation "to comply with the fundamental requirements of the Federal Rules of . . . Appellate Procedure." *Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994). Nor are Holt's briefing failures cured by the citations to the record set out in his reply brief. This court "generally do[es] not consider arguments raised for the first time in a reply brief." *Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 676 n.9 (10th Cir. 2016). Doing so hinders "efficient appellate review" by allowing Holt to provide record cites for the first time in a brief to which FFPD was not entitled to respond. *See MacArthur*, 495 F.3d at 1160. Nevertheless, it is unnecessary to resolve whether Holt's briefing deficiencies serve to waive his appellate arguments because a review of the record, by reference to the record citations set out in Holt's reply brief, demonstrates Holt's appeal fails on the merits. *See United States v. Paycer*, 154 F.4th 1261, 1283 (10th Cir. 2025) (declining to decide whether issue was waived because it was "patent that the district court did not" err).

[FFPD], including developing recommendations and plans for the protection of life and property within the community." *Id.* During Holt's tenure as Fire Chief, he was the only full-time employee at FFPD. Holt managed the closed-circuit security system, which was operated by a third-party vendor. Holt also controlled physical access to the fire station. Indeed, the record indicates Holt had the power to prevent even members of the board from accessing the firehouse.

On May 2, 2023, an election was held for the FFPD Board, which resulted in the election of five non-incumbent candidates. On the day of the election, Holt was acting in his capacity as Fire Chief. He did not, however, have any official duties as to the conducting of the election. The election took place, with Holt present, at Fire Station 1 at 2606 W. Highway 24, Florissant, Colorado, and by mail-in ballot.

On May 15, 2023, Starla Thompson, the incumbent FFPD President, filed a Complaint of Election Violations in Teller County District Court, alleging election fraud against the non-incumbent candidates and election workers. Holt was contacted by an investigator from the Teller County District Attorney's Office, Clint Kramer,[5] who requested that Holt provide footage of the election recorded on FFPD's closed-circuit security system. Holt, with no other individuals present, met with Kramer and provided him with the election-day surveillance video from the fire station.[6] Kramer

---

[5] The spelling of the investigator's name is inconsistent throughout the record. In certain filings, his last name is spelled "Cramer," while in others, it is spelled "Kramer." The court refers to him as "Kramer."

[6] In his pro se opening and reply briefs, Holt sets out several factual assertions regarding his role in the provision of the surveillance video to the investigator that

viewed the videos in Holt's presence, but did not consult Holt as to which portions of

the video Kramer should watch. Holt provided oral statements in response to

Kramer's questions about the video, questions such as "[h]ow far do you think these

people were from this position?" Holt also identified individuals appearing on the

surveillance video.[7] Furthermore, pursuant to his control of physical access to the fire

_____

lack evidentiary support in the record. In particular, Holt asserts (1) control of the surveillance video system resided exclusively in the third-party vendor; (2) his access to the security system was limited to an "app" on his phone; (3) to access the surveillance video, he had to physically go to the vendor, while off-duty, and had to pay for a "data storage device" so the video could be downloaded off the vendor's servers; and (4) because the fire station is a publicly funded building, "any other citizen could have used these exact channels to retrieve the evidence provided to the 4th Judicial District Attorney's Investigator." Holt's Opening Br. at 9; Holt's Reply Br. at 7-9. Holt further asserts the district court erred, given these "facts," in determining Holt acted pursuant to his official duties in obtaining the surveillance video and providing that video to the investigator. In contrast to Holt's unsupported assertions, the only evidence in the record indicates that although the vendor operated the closed-circuit video system, that system was managed by Holt. R. Vol. 2 at 34 (Holt's made-under-perjury declaration, stating as follows: "During my tenure, I was the only full-time employee at FFPD. Accordingly, I managed the closed-circuit security system, which was operated by a third-party vendor."). And, although the record reflects that Holt went to the vendor to obtain the video, it does not support the assertion he did so on his own time or purchased the data storage device with his own funds. *See* R. Vol. 1 at 172. Furthermore, in his response to FFPD's motion for summary judgment, Holt conceded "[h]e had sole access to the security tapes." R. Vol. 2 at 12. Thus, for purposes of resolving whether Holt's provision of the surveillance video to the investigator was done pursuant to Holt's official duties, this court limits itself to the following record facts: (1) Holt was FFPD's Fire Chief and only full-time employee; and (2) Holt managed the surveillance video system and controlled access to the fire station.

[7] Holt asserts that, for purposes of reviewing the correctness of the district court's grant of summary judgment in favor of FFPD, the record supports the fact he disclosed to Kramer wrongdoing on the part of poll watchers and non-incumbent board members. As noted above, *see supra* n.4, this assertion in Holt's opening brief is not supported by a single citation to the record. For the first time in his reply brief, *but see id.* (explaining the court does not generally consider arguments raised for the

8

station, Holt allowed the investigator to view the scene and take measurements. R. Vol. 1 at 172 ("So my—my moment with Investigator [Kramer] was he wanted me to meet him [at the fire station], provide him the thumb drive, but then also to—I am the one that controlled the physical access to the fire station. So, he wanted to see the— where the cones had been set up. And he took measurements, and all sorts of investigator stuff."). Holt did not consider himself "part of" the Complaint of Election Violations. On June 27, 2023, the Teller County District Court dismissed Thompson's Complaint of Election Violations with prejudice.

---

first time in the appellant's reply brief), Holt supports this assertion with a citation to page 176 of volume one of the appellate record. Even the most generous reading of the portion of the record cited by Holt fails to support Holt's assertion he disclosed to Kramer criminal wrongdoing on the part of others. This portion of the record reflects Holt's deposition testimony. FFPD's attorney asked Holt the following: "[W]hen the complaint says that 'Mr. Holt met with the criminal investigator on May 19, 2023, to provide oral testimony,' what oral testimony did you provide?" R. Vol. 1 at 176. Holt responded as follows:

> A. What I described before the break. When he would ask me questions, and I would answer them, similar to how we are right now.
>
> Q. Well, what did he ask you questions about?
>
> A. Who this individual was. If I had—if I could identify who he was pointing to on the screen. "How far do you think these people were from this position?" That is all I can really think of was those sort of questions.

*Id.* Thus, the identified portion of the record supports only that Holt responded to logistical questions by the investigator, not that Holt disclosed criminal wrongdoing on the part of any individual.

The new FFPD board terminated Holt's employment on June 22, 2023, ostensibly because Holt's failure to timely renew FFPD's insurance led to a lapse in coverage. Holt asserts the lapsing of the FFPD's insurance is a pretext and his termination was, in fact, undertaken in retaliation for his cooperation with a criminal investigator about the new Board's alleged conduct during the May 2, 2023, election.

## C. Procedural Background

FFPD filed a motion for summary judgment on Holt's First Amendment retaliation claim.[8] FFPD argued, inter alia, that providing the surveillance video and answering logistic-type questions were within Holt's official duties. R. Vol. 1 at 124 ("The only reason [Holt] had access to the video footage was because of his position as Fire Chief. The only reason [Holt] was asked to provide the video footage was because of his position as Fire Chief. Moreover, as the Executive Officer of the FFPD, [Holt] would be expected to comply with law enforcement requests for information."). Holt opposed summary judgment, arguing his allegedly protected instances of speech—providing the surveillance video and answering logistics-type questions—were not official acts because those specific acts were not set out in his job description, this was the only time he had provided surveillance video to an

---

[8] At no point in that motion did FFPD assert Holt's actions in providing the surveillance video to Kramer did not amount to an act of engaging in "speech." Thus, this court expresses no view on the matter. *See Aquilina v. Wriggelsworth*, 759 F. App'x 340, 341, 343 n.1 (6th Cir. 2018) (assuming, but not deciding whether, a judge's provision of courthouse security video to a "news reporter" amounted to engaging in speech).

investigator, and "he was not legally obligated to speak but chose to do so regardless." R. Vol. 2 at 14.

The district court granted summary judgment in favor of FFPD, concluding Holt's speech was pursuant to his official duties. *Holt*, 2025 WL 947519, at *3-5. The district court emphasized the following facts: (1) it was undisputed Holt acted in his official capacity on the day of the election; (2) during Holt's tenure as Fire Chief, he was the only full-time FFPD employee; (3) Holt managed the closed-circuit security system; (4) Kramer requested video footage from the day of the election and, in response, Holt voluntarily met with Kramer, provided the surveillance video, and answered fact-based questions; and (5) Holt made no argument and presented no evidence he "expressed to [Kramer] that he believed violations of election law had occurred." *Id.* at *4. "Based on the totality of [those] facts and circumstances," the district court concluded "Holt's speech was part of the tasks he was employed to perform, and he spoke not as a citizen, but as a public employee." *Id.* Ultimately, in so concluding, the district court found it "is instructive that one of the job responsibilities of the Fire Chief of the FFPD [is] to lead, manage, and administer all Fire Department operations. It is in that capacity that he managed, and acted as the custodian of, the closed-circuit security system that yielded the video sought by the Teller County District Attorney's investigator, and answered the factual questions posed by [Kramer]." *Id.* (citation to the district court docket omitted).

11

### III. DISCUSSION

**A. Standard and Standard of Review**

This court reviews a district court's grant of summary judgment de novo, employing the same legal standard as the district court. *Knopf*, 884 F.3d at 946. The question of whether Holt spoke pursuant to his official duties is, likewise, a question of law subject to de novo review. *Id.* at 945.

**B. Analysis**

Given the limited record and this court's "broad view of the meaning of speech that is pursuant to an employee's official duties," *id.* (quotation omitted), Holt has not overcome the "heavy barrier" of demonstrating his speech was undertaken as a private citizen, *Tufaro*, 107 F.4th at 1138. In so holding, this court notes all relevant contextual factors addressed in the record favor such a conclusion. Furthermore, evidentiary gaps weigh against Holt, the party with the burden of persuasion on the first *Garcetti/Pickering* element. *See Timmins*, 157 F.4th at 1277; *Tufaro*, 107 F.4th at 1138.

Holt was FFPD's chief executive officer and only full-time employee. He controlled access to the fire station and, as he conceded in his response to FFPD's motion for summary judgment, "[h]e had sole access to the security tapes." R. Vol. 2 at 12. Thus, Holt, and only Holt, had access to the surveillance video and that access was based exclusively on his position as Fire Chief. *See Aquilina v. Wriggelsworth*, 759 F. App'x 340, 344-45 (6th Cir. 2018) (holding the fact a public employee only has access to a video recording because of her government position "augurs well for

12

finding her speech was not protected"). This fact also readily explains why Kramer

contacted Holt to seek access to the surveillance video and why Holt obtained the

video on Kramer's behalf.[9]

Both the contents of Holt's speech and its audience support the conclusion

Holt spoke pursuant to his official duties. Holt provided the surveillance video to

Kramer at the firehouse. Only he and Kramer were present. There is no indication in

the record that Holt identified for Kramer any particularly relevant portions of the

surveillance video. Instead, Kramer contacted Holt and asked Holt "for the hours and

the cameras." R. Vol. 1 at 172. Kramer then viewed the clips in an order and manner

most convenient to him,[10] asking Holt occasionally about the identities of individuals

---

[9] The record is silent as to whether Holt accessed video from the closed-circuit security system often or only rarely and whether he did so for his own purposes or to provide such video to others. *See Timmins*, 157 F.4th at 1277; *Tufaro*, 107 F.4th at 1138. It leaves no doubt, however, that he was only able to do so here because of his control, as the FFPD's executive officer, over the firehouse and security system. *Knopf v. Williams*, 884 F.3d 939, 945 (10th Cir. 2018) ("If the speech involves the type of activities that the employee was paid to do, . . . it falls within the scope of an employee's duties." (quotations and alterations omitted)); *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1203 (10th Cir. 2007) (acknowledging speech may be made pursuant to an employee's official duties "even though the speech concerns an unusual aspect of an employee's job that is not part of his everyday functions").

[10] Holt testified at his deposition as follows:

> Q. How did the—how did the investigator know which sections to show you?

> A. He wasn't showing me. He was just bringing them up. So, they would have been, if I remember correctly, I think one-hour clips, but it might have been, . . . like, every 15 minutes. You know, the company put

and how close or far those people were from positions in the firehouse. *See Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1203 (10th Cir. 2007) ("[I]f an employee engages in speech during the course of performing an official duty and the speech reasonably contributes to or facilitates the employee's performance of the official duty, the speech is made pursuant to the employee's official duties."). Holt did not, during this meeting, identify to Kramer criminal conduct on the part of any individual. Instead, he listened as Kramer stated the alleged factual and legal bases of complaints made by others. Thus, on this record, Holt spoke for the purpose of completing an administrative task within his official duties, not to disclose to the public the wrongdoing of government officials or citizens. *See Tufaro*, 107 F.4th at 1138 ("It is not enough . . . that the public interest was part of the employee's motivation. In several cases we have described the relevant legal question as whether the employee's *primary* purpose was to raise a matter of public concern." (quotation omitted)). True enough, Holt spoke to an

---

it on a thumb drive, so they would have been big, huge clips of them. However they filed them. He was clicking and opening.

So, it would have been labeled, like, Camera 1 training room. Camera 2, kitchen, or something. 3, outside. Onward. But he would—he was, like opening and then playing, kind of looking.

And I believe he had had complaints given to him that he was looking for stuff. But it was a very quick 15 to 20 minutes that he kind of did that . . . .

R. Vol. 1 at 174.

14

investigator with the District Attorney's Office, but that investigator was investigating supposed acts of election fraud that had already been disclosed. There is no indication in the record the investigator sought Holt's help in obtaining the surveillance video for any reason other than that Holt was the official in control of the fire house and closed-circuit security system.

In sum, taking a practical view of all relevant facts, this court concludes Holt was "perform[ing] the task[] he was paid to perform" when he provided the surveillance video to Kramer and answered Kramer's logistical questions about the contents of the video. *Lane*, 573 U.S. at 239. Thus, his "speech" was "commissioned by his employer, . . . and it enjoys no First Amendment protection." *Knopf*, 884 F.3d at 946 (quotation and citation omitted).

The Supreme Court's decision in *Lane* is not to the contrary. *Lane* answered a narrow and entirely different question. In *Lane*, the director of a public program became aware an employee, an Alabama State Representative, was on the payroll, but did not report for work. 573 U.S. at 232. That employee was eventually indicted for, inter alia, theft involving a program receiving federal funds. *Id.* The director "testified, under subpoena, regarding the events that led to his terminating [the employee]." *Id.* at 233. Thereafter, the President of the public program terminated the director's employment. *Id.* at 233-34. The director then sued, asserting he was fired in retaliation for exercising his First Amendment right to testify against the employee. *Id.* Both the district court and the Eleventh Circuit concluded the director's speech was not protected because he became aware of the employee's

criminal conduct while performing his official duties. *Id.* at 234-35. The Supreme

Court reversed. *Id.* at 238. The Court held that "the First Amendment protects a

public employee who provides truthful sworn testimony, compelled by subpoena,

outside the scope of his ordinary job responsibilities." *Id.*[11] In support of this holding,

the Court reasoned as follows:

> Sworn testimony in judicial proceedings is a quintessential example of speech as a citizen for a simple reason: Anyone who testifies in court bears an obligation, to the court and society at large, to tell the truth. When the person testifying is a public employee, he may bear separate obligations to his employer—for example, an obligation not to show up to court dressed in an unprofessional manner. But any such obligations as an employee are distinct and independent from the obligation, as a citizen, to speak the truth. That independent obligation renders sworn testimony speech as a citizen and sets it apart from speech made purely in the capacity of an employee.

*Id.* at 238-39 (citations omitted).

The facts in *Lane* bear no relation to this case. Holt did not testify in court

pursuant to a subpoena. Thus, the special concerns animating the decision in *Lane*,

*id.* at 238-41, are simply not present here. Nor did Holt pass along evidence of

wrongdoing he came across in the incidental exercise of his duties. His speech—

meeting with Kramer at the fire house, providing the surveillance video only he could

provide, and answering simple logistics questions about the facility he managed—

was an exercise of the very job duties he was hired to perform. *Lane* does not stand

---

[11] The Court further noted that it was undisputed that the director's "ordinary job responsibilities did not include testifying in court proceedings." *Lane v. Franks*, 573 U.S. 228, 238 n.4 (2014).

for the proposition that every disclosure that allegedly relates to an instance of official wrongdoing automatically amounts to speech outside of a government employee's duties. *See Holub v. Gdowski*, 802 F.3d 1149, 1155-56 (10th Cir. 2015) (rejecting the notion *Lane* significantly altered the first element of the *Garcetti/Pickering* test and, instead, holding that "*Lane*'s consideration of whether speech is employee speech or private citizen speech focused on the job duty giving rise to the speech. Our own decisions interpreting *Garcetti*'s first step are consistent with this focus.").

## IV. CONCLUSION

For those reasons set out above, the order of the United States District Court for the District of Colorado granting summary judgment in favor of FFPD is hereby **AFFIRMED**.

Entered for the Court

Michael R. Murphy
Circuit Judge